(No. 24248.—

FRANK O. LOWDEN *et al.* Defendants in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BEATRICE CRAIG, Plaintiff in Error.)

*Opinion filed December 15, 1937—Rehearing denied Feb. 2, 1938.*

CHESTER F. BARNETT, for plaintiff in error.

DANIEL TAYLOR, and MILLER, ELLIOTT & WESTERVELT, (EUGENE R. JOHNSON, of counsel,) for defendants in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

Application was made by plaintiff in error as widow of Lawrence F. Craig, deceased, for compensation for the use of herself and their two children, Patricia Ruth Craig, aged eight years, and Lawrence William Craig, aged one year, and an unborn child of the marriage between plaintiff in error and deceased. The death of Craig occurred

on the night of December 14, 1935, while he was employed as a switchman by the Chicago, Rock Island and Pacific Railway Company, a corporation, and the trustees thereof, the defendants. There was an award by the arbitrator, and on petition for review before the Industrial Commission the award was approved and confirmed and ordered to stand as the decision of the commission. The record of the Industrial Commission was reviewed on *certiorari* by the circuit court of Peoria county and an order was entered by that court setting aside the decision of the commission, finding that the deceased and the defendant carrier were engaged in interstate commerce at the time of the injury which resulted in the death of the employee and that the Industrial Commission had no jurisdiction of the case. The cause is brought to this court upon writ of error to review the order of the circuit court of Peoria county.

On November 22, 1935, the Wortham Machinery Company, of Cheyenne, Wyoming, ordered from R. G. Le Tourneau, Inc., certain road machinery, and, on November 28, 1935, other road machinery including a certain power-control unit. This power-control unit was to be mounted on a tractor ordered on the same day by the Wortham Machinery Company from the Caterpillar Tractor Company. The tractor was to be placed on a flat car in East Peoria by the Caterpillar Tractor Company and transferred to the Le Tourneau company at Peoria, where the power-control unit was to be mounted on the tractor and the other machinery ordered from the Le Tourneau company loaded on the same car to be shipped to the Wortham Machinery Company at Cheyenne, Wyoming. The plants of the Caterpillar Tractor and the Le Tourneau companies are connected by railroad facilities of the Peoria and Pekin Union Railway Company and the defendant carrier. To carry out the Wortham company's instructions, the Caterpillar Tractor Company ordered a fifty-foot flat car for the purpose of transferring the tractor from its plant to the Le Tourneau

plant and then to the Wortham Machinery Company, at Cheyenne. On December 14, 1935, this car was loaded with the tractor and transferred over the tracks of the Peoria and Pekin Union Railway Company and the defendant carrier under a bill of lading which described the shipper as the Caterpillar Tractor Company, and the consignee as the Wortham Machinery Company, care of R. G. Le Tourneau, Inc., Peoria, Illinois. While the instrument also contained instructions for re-shipment to the Wortham Machinery Company at Cheyenne, Laramie county, Wyoming, over a designated route, no through bill of lading to Wyoming had yet been issued. It was after the defendant carrier had received the flat car, and a box car containing certain other tractors not involved in this case, that the accident occurred.

The conflicting contentions of fact concern themselves principally with the question as to whether the accident happened when the switch engine was pushing the cars into or coming out from the Le Tourneau plant. The point seems to us immaterial. On the night of the accident the defendant's switching crew consisted of three men, Harold Kellerstrass, Frank Moran and the deceased, Lawrence Craig. Just prior to the injury two cars had been switched on a siding, and the deceased was left on that track to let the air out of the brakes so other cars could be pushed against them. It was while he was engaged in this employment, or just after he had completed this employment, that the flat car loaded with the tractor, and the box car, were pushed over the tracks leading to the Le Tourneau siding. There was testimony to the effect that someone, presumably the deceased, with a switchman's lantern in his hand, came toward the tracks leading to the Le Tourneau siding and stood on the easterly or river side of the tracks, ahead of the cars being pushed in. It was not until after the switch engine was backing out from the Le Tourneau plant that the absence of the deceased was noticed.

The sole question involved is whether the injury occurred in interstate or intrastate commerce. Just prior to the time the cars were being pushed into the Le Tourneau siding the deceased was engaged in letting air out of brakes on two cars left on a siding. There is no contention that, at that time, the deceased was engaged in anything other than intrastate commerce. The evidence is both slight and conflicting as to what happened immediately thereafter and just how the deceased lost his life. Kellerstrass testified that when the cars were being pushed in he saw the deceased coming over a bank about three car-lengths ahead of him and walking toward the river side of the Le Tourneau siding. He testified that the deceased crossed over to the east side and was apparently waiting for the cars to come together, and that the deceased put his hand up as if he were going to step on the car. The witness, Moran, testified that he saw the deceased coming towards the siding with a switchman's lantern, or someone whom he presumed to be the deceased, since it was so dark that he could not really see him but only the light.

Where it is difficult, if not impossible, to determine from the evidence just what the employee was doing at the time he was killed, the court will not substitute its judgment for that of the Industrial Commission, where there is any substantial evidence in the record which justifies its finding. (*Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167.) In a proceeding under the Workmen's Compensation act, where the employee is engaged in both interstate and intrastate commerce, the burden of proof is upon the employer to show that the employee, at the time of the accident, was engaged in work which was a part of interstate commerce. (*Payne* v. *Industrial Com.* 296 Ill. 223; *Rockford City Traction Co.* v. *Industrial Com.* 295 id. 358; *Grand Trunk Western Railway Co.* v. *Industrial Com. supra.*) The mere expectation that an employee who received an injury would probably be called upon to perform

a task in interstate commerce does not bring the injury within the Federal Employer's Liability act. *Grand Trunk Western Railway Co.* v. *Industrial Com. supra.*

The proof in this case is sufficient to sustain the finding of the Industrial Commission, and the circuit court should have confirmed the award.

The judgment of the circuit court of Peoria county is reversed and the cause remanded to that court, with directions to reinstate and confirm the award of the Industrial Commission. *Reversed and remanded, with directions.*